UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| YENIEL HERNANDEZ PEDRAZA, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 1:26-cv-12640-ADB |
| DAVID WESLING, Acting Boston Field | * | |
| Office Director, U.S. Immigration and | * | |
| Customs Enforcement, in his official | * | |
| capacity; DAVID VENTURELLA, Acting | * | |
| Director, U.S. Immigration and Customs | * | |
| Enforcement, in his official capacity, | * | |
| | * | |
| Defendants. | | |

## MEMORANDUM AND ORDER

BURROUGHS, D.J.

In this action, Plaintiff Yeniel Hernandez Pedraza ("Hernandez Pedraza"), a Cuban

national subject to a final order of removal, has sued U.S. Immigration and Customs

Enforcement ("ICE") officials David Wesling and David Venturella (collectively, "Defendants")

under the Administrative Procedure Act ("APA"). [ECF No. 1 at 7–9]. Hernandez Pedraza

seeks prospective relief to prevent his re-detention by ICE under what he alleges to be a policy of

re-detaining noncitizens whose removal is not significantly likely to occur in the reasonably

foreseeable future, in violation of 8 C.F.R. § 241.13. [Id.]. Currently, before the Court is

Hernandez Pedraza's motion for a temporary restraining order and preliminary injunction, in

which he asks the Court to "issue an order which prohibits ICE from re-detaining Hernandez

Pedraza" unless the government submits advance proof of the legal basis for his detention.  [ECF No. 10 at 13].  For the following reasons, the motion is **<u>DENIED</u>**.[1]

## I.    BACKGROUND

### A.    Factual Background

The following facts are drawn from the evidence submitted by the parties in connection with Hernandez Pedraza's motion for a temporary restraining order.  [ECF No. 10].

Hernandez Pedraza is a noncitizen who immigrated to the United States from Cuba as a child in 1987 and became a lawful permanent resident.  [ECF No. 9-1 ¶ 2].  In March 2005, as a result of criminal convictions, an immigration judge ordered Hernandez Pedraza to be removed to Cuba and subsequently detained him.  [Id. ¶ 9].  Because ICE could not secure his deportation to Cuba or any other country, however, ICE released him from detention in July 2005 under an order of supervision ("OSUP").  [Id. ¶ 10]; [id. at 7–9].  Since that time, Hernandez Pedraza has remained on release and subject to the terms of the OSUP.  [Id. ¶¶ 11–25].  Hernandez Pedraza states that he has complied with the terms of his OSUP, and Defendants do not argue otherwise. [Id. ¶ 19].

Since 2025, the ICE Field Office in Burlington, Massachusetts has re-detained a significant number of people previously released on OSUPs, purportedly for the purpose of effectuating their removals.  See, e.g., [ECF No. 9-2]; [ECF No. 9-3]; [ECF No. 9-4]; [ECF No.

---

[1] After the July 14, 2026 hearing on the motion for a temporary restraining order, Hernandez Pedraza requested leave to file—and subsequently filed—a "memorandum of law in opposition to Defendant's oral motion to dismiss for lack of standing."  [ECF No. 22]; [ECF No. 26].  The Court does not understand Defendants to have made such a motion and therefore does not rule on whether Hernandez Pedraza's allegations, taken as true, are sufficient to establish standing under the Fed. R. Civ. P. 12(b)(1) standard.  If Defendants wish to seek dismissal under Fed. R. Civ. P. 12(b)(1), they must file a written motion requesting that relief.

9-6]; [ECF No. 9-7]; [ECF No. 9-8]; [ECF No. 9-9]; [ECF No. 9-10]; [ECF No. 9-11]; [ECF No. 9-12]. Often, these individuals have been arrested during scheduled ICE check-ins. See, e.g., Tran v. Hyde, No. 25-cv-12546, 2025 WL 3724853, at *1 (D. Mass. Dec. 24, 2025); Hall v. Nessinger, No. 25-cv-00667, 2026 WL 18583, at *5 (D.R.I. Jan. 2, 2026); Huynh v. Wesling, No. 25-cv-13794, 2026 WL 183467, at *1–2 (D. Mass. Jan. 23, 2026). In many of these cases, courts have later found the individuals' re-detentions to be unlawful because ICE could not show either that they violated their OSUPs or that changed circumstances rendered their removal likely in the reasonably foreseeable future. See Nguyen v. Hyde, 788 F. Supp. 3d 144, 146–49 (D. Mass. 2025); Tran, 2025 WL 3724853, at *1; Munagi v. McDonald, 813 F. Supp. 3d 225, 227 (D. Mass. 2025); Singharath v. Wesling, No. 25-cv-00668, ECF No. 11 (D.R.I. Dec. 23, 2025); Hall, 2026 WL 18583, at *5; Huynh, 2026 WL 183467, at *1–2; Gomes-Afonseca v. Lyons, No. 26-cv-10215, 2026 WL 538167, at *1 (D. Mass. Feb. 26, 2026); Deng v. Nessinger, No. 26-cv-00113, 2026 WL 643198, at *1 (Mar. 9, 2026); Bulle v. Wesling, No. 26-cv-00019, 2026 WL 183840, at *2–3 (D.R.I. Jan. 23, 2026); Nguyen v. Lyons, No. 25-cv-00631, 2026 WL 125093, at *3–4 (D.R.I. Jan. 16, 2026); Vo v. Lyons, No. 25-cv-00533, 2026 WL 323133, at *4–5 (D.N.H. Jan. 27, 2026); Lu v. Joyce, No. 26-cv-00041, 2026 WL 352447, at *3–4 (D. Me. Feb. 9, 2026); Nguyen v. Wesling, No. 26-cv-00074, ECF No. 7 (D.R.I. Feb. 12, 2026); Tran v. Lyons, No. 26-cv-11036, 2026 WL 788242, at *3–4 (D. Mass. Mar. 20, 2026).

On May 21, 2026, Hernandez Pedraza attended an annual supervision check-in at the Boston ICE Field Office, during which he was asked questions about his medications, gender, and marital status that he had not previously been asked during ICE check-ins. [ECF No. 9-1 ¶¶ 22–25]. Prior to this check-in, Hernandez Pedraza had been required to attend check-ins only on an annual basis, [id. ¶ 25]. This time, however, he was ordered to return to the Field Office

3

on June 24, 2026. [Id. ¶ 24]. These changes caused Hernandez Pedraza to be concerned that ICE would revoke his OSUP and re-detain him at his next check-in, leading him to file this action. [Id. ¶ 26]. After Hernandez Pedraza filed this action and the present motion, the government disclaimed any intent to detain him at that check-in, [ECF No. 14], and, in fact, he was not detained then and, as far as the Court has been made aware, has not been detained since, [ECF No. 24 at 5].

### B.      Procedural Background

Hernandez Pedraza filed his complaint on June 10, 2026, [ECF No. 1], and filed the present motion two days later, [ECF No. 9]. The same day, Defendants filed an opposition consisting only of an averment that they did not intend to re-detain Hernandez Pedraza and asserting that the case is moot. [ECF No. 14]. Hernandez Pedraza filed a reply brief on June 16. [ECF No. 17]. On July 14, 2026, the Court held a hearing at which it heard argument on Hernandez Pedraza's motion. [ECF No. 21]. Thereafter, Hernandez Pedraza sought leave to file an "opposition memorandum" to what he construed as an "oral motion to dismiss for lack of standing" he understood Defendants to have raised during the hearing. [ECF No. 22]. As stated supra Footnote 1, the Court does not understand Defendants to have raised such a motion. Nonetheless, the Court granted Hernandez Pedraza leave, [ECF No. 23], to file his additional memorandum of law, [ECF No. 26], which the Court has considered, to the extent relevant, as a supplemental filing in support of his motion for a temporary restraining order.

4

## II.    LEGAL STANDARD

Preliminary relief[2] under Fed. R. Civ. P. 65 is "an 'extraordinary and drastic remedy' . . . that 'is never awarded as of right.'"  Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011) (quoting Munaf v. Geren, 553 U.S. 674, 689–90 (2008)). To obtain it, a movant must establish "that it is likely to succeed on the merits, that it is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in its favor, and that an injunction is in the public interest."  New York v. Trump, 171 F.4th 1, 15 (1st Cir. 2026) (internal brackets omitted) (quoting Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)).  Likelihood of success on the merits "weighs most heavily" in the analysis.  CVS Pharm., Inc. v. Lavin, 951 F.3d 50 (1st Cir. 2020) (citing Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 16 (1st Cir. 1996)).  To show such a likelihood, "a plaintiff seeking a preliminary injunction must offer proof beyond unverified allegations in the pleadings."  Whoop, Inc. v. Shenzhen Lexqi Elec. Tech. Co., Ltd., 818 F. Supp. 3d 207, 222 (D. Mass. 2026) (quoting Strahan v. Roughead, No. 08-cv-10919, 2010 WL 4827880, at *10 (D. Mass. Nov. 22, 2010)).

## III.    DISCUSSION

Hernandez Pedraza's motion fails because the Court cannot conclude, based on the limited record before it, that Hernandez Pedraza is likely to succeed on the merits of his claims. Specifically, Hernandez Pedraza has not at this point put forward sufficient evidence to meet his

---

[2] Hernandez Pedraza's motion requests both a temporary restraining order and a preliminary injunction. [ECF No. 9].  Because "Courts apply the same standard in assessing" both forms of relief, and the Court is considering the motion "follow[ing] full briefing and the opportunity to be heard by the Court," it evaluates both requests together.  Massachusetts v. Nat'l Insts. of Health, 770 F. Supp. 3d 277, 295 (D. Mass. 2025) (citing Wash. Tr. Advisors, Inc. v. Arnold, 646 F. Supp. 3d 210, 217 (D. Mass. 2022)).

burden to establish either (A) Article III standing, or (B) existence of a final agency action reviewable under the APA.

### A.      Standing

"At the preliminary injunction stage . . . the plaintiff must make a 'clear showing' that []he is 'likely' to establish each element of standing." Murthy v. Missouri, 603 U.S. 43, 58 (2024) (quoting Winter, 555 U.S. at 22). "To establish standing, a plaintiff must show that they have 'suffered or likely will suffer' a 'concrete' injury in fact; that the defendant likely caused, or will cause, their injury; and that a court likely could redress that injury." Courtemanche v. Noble, 177 F.4th 60, 64 (1st Cir. 2026) (quoting FDA v. All. for Hippocratic Med., 602 U.S. 367, 380–81 (2024)). The anticipated harm must be "likely to occur, or 'imminent,'" rather than "merely 'hypothetical' or 'speculative.'" Id. at 65 (first citing All. for Hippocratic Med., 602 U.S. at 381; and then citing Clapper v. Amnesty Int'l USA, 568 U.S. 398, 414 n.5 (2013)).

Hernandez Pedraza argues that he has met the requirements of standing because he has shown the existence of a consistent government policy by which ICE "re-detains noncitizens like Mr. Hernandez Pedraza without any individualized assessment as to whether each noncitizen has materially violated the conditions of his release or whether the noncitizen's removal has become significantly likely in the reasonably foreseeable future." [ECF No. 10 at 9]. To be sure, a plaintiff may establish a substantial risk of future harm by showing that the government has "adopted a policy and practice" of unlawful conduct, even though unwritten, and that the named plaintiff is "likely among those targeted" by the policy. Escobar Molina v. U.S. Dep't of Homeland Sec., 811 F. Supp. 3d 1, 36 (D.D.C. 2025). Here, however, the limited evidence currently before the Court does not meet Hernandez Pedraza's burden to show the existence of such a policy that will likely affect him. The only evidence Hernandez Pedraza has put forward

is several examples of similarly situated individuals who have been unlawfully re-detained by ICE over the past year. [ECF No. 10 at 4–6, 9]. Given the anecdotal nature of this evidence, the Court simply has no way to evaluate the overall proportion of individuals in Hernandez Pedraza's circumstances who have been re-detained at their ICE check-ins, or on what basis ICE is deciding whom to re-detain. Accordingly, the Court is unable to evaluate the likelihood that Hernandez Pedraza himself will in fact be subject to similar re-detention.

The cases Hernandez Pedraza relies upon all involved fact-bound, case-specific determinations of risk that do not persuade the Court the same result is appropriate here. Although the plaintiff in Feitoza v. Noem, No. 26-cv-40011, 2026 WL 252422 (D. Mass. Jan. 30, 2026), offered evidence similar to that offered by Hernandez Pedraza, that case involved an alleged policy that ICE had "declined to disclaim or separate itself from." Id. at *3. Here, by contrast, ICE does not claim the ability or right to arrest individuals in violation of 8 C.F.R. § 241.13(i), and Defendants explicitly dispute the existence of the policy Hernandez Pedraza alleges, [ECF No. 24 at 10]. Likewise, in Garro Pinchi v. Noem, 813 F. Supp. 3d 973 (N.D. Cal. 2025), the government "expressly conceded that DHS considers each plaintiff's detention to be mandatory," which, unsurprisingly, supported an inference that such detention was likely to occur. Id. at 1002–03. Here, by contrast, Defendants do not contend that Hernandez Pedraza's arrest is mandatory, and, indeed, explicitly disclaim any intention of arresting him. [ECF No. 14]; [ECF No. 24 at 5]. Finally, Holder v. Humanitarian L. Project, 561 U.S. 1 (2010), was a pre-enforcement challenge to a criminal statute that Plaintiffs intended to violate. Id. at 15–16. Thus, unlike this case, there was no dispute as to the likelihood of government action, and the government did not argue that the plaintiffs would not be prosecuted for violating the law. Id.

Accordingly, for the purposes of his requested preliminary injunction, Hernandez Pedraza has not put forward sufficient evidence to establish the essential requirements of standing.

### B.    Final Agency Action

Under the APA, courts may typically only review "final agency action."  5 U.S.C. § 704. An agency action is final if two conditions are met: first, the action must "mark the consummation of the agency's decisionmaking process" and not be "of a merely tentative or interlocutory nature," and, second, it must be "one by which rights or obligations have been determined, or from which legal consequences will flow."  Harper v. Werfel, 118 F.4th 100, 117 (1st Cir. 2024) (internal quotation marks omitted) (quoting Bennett v. Spear, 520 U.S. 154, 178 (1997)).  As a threshold matter, "[f]or there to be 'final agency action,' . . . there must first be 'agency action,'" which is defined to "includ[e] the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."  San Francisco Herring Assn. v. Dep't of the Int., 946 F.3d 564, 575–76 (9th Cir. 2019).  Although "[a]gency action 'need not be in writing to be judicially reviewable as a final action,'" the plaintiff must still demonstrate that a pattern of conduct is more than "a constellation of independent decisions or a general drift in agency priorities."  Am. Assn. of Univ. Professors v. Rubio, 780 F. Supp. 3d 350, 385 (D. Mass. 2025) ("AAUP").  The "existence of a de facto policy" is a question of fact.  Trump, 171 F.4th at 16 (citing Hisp. Affs. Project v. Acosta, 901 F.3d 378, 386 (D.C. Cir. 2018)).

For substantially the same reasons discussed above in relation to standing, the record currently before the Court does not satisfy Hernandez Pedraza's burden to show the existence of a reviewable de facto policy.  Once again, the only evidence Hernandez Pedraza has provided is a collection of individual instances where noncitizens were arrested unlawfully, and the Court is

8

unable to evaluate how widespread or consistent such arrests are.  [ECF No. 10 at 4–6, 9].  The Court therefore cannot determine at this point whether these unlawful arrests are evidence of a reviewable "re-detention policy," [id. at 2], or simply "a constellation of independent decisions" driven by a "general drift in agency priorities."  AAUP, 780 F. Supp. 3d at 385.  Accordingly, the Court will deny the injunctive relief Hernandez Pedraza requests.

## IV.   CONCLUSION

For the foregoing reasons, Hernandez Pedraza's motion for a temporary restraining order and a preliminary injunction is **DENIED**.[3]

**SO ORDERED.**

August 11, 2026                                                    /s/ Allison D. Burroughs
                                                                           ALLISON D. BURROUGHS
                                                                           U.S. DISTRICT JUDGE

---

[3] Although the Court denies the requested relief, because Hernandez Pedraza's failures are evidentiary, not legal, the Court notes that Hernandez Pedraza may be able to establish standing or the existence of final agency action at a later stage of litigation on a more developed record. Because Hernandez Pedraza's claims turn on disputed factual questions regarding the existence of the policy at issue, he may engage in discovery to explore the existence of the alleged re-detention policy if he proceeds with this case.  See Escobar Molina v. U.S. Dep't of Homeland Sec., 811 F. Supp. 3d 1, 63 (D.D.C. 2025) (first citing AFL-CIO v. Dep't of Lab., 349 F.R.D. 243, 248 (D.D.C. 2025); and then citing Hisp. Affs. Project v. Acosta, 901 F.3d 378, 388 (D.C. Cir. 2018)) ("[C]ourts may allow discovery in APA cases when '[t]he agency action challenged . . . is unlike the actions normally challenged in APA cases, such as a promulgated regulation.' . . . especially when discovery is needed to 'ascertain the contours of the precise policy at issue.'").